*651 OPINION OF THE COURT
Paula J. Omansky, J.
Petitioner Peter Meringolo, on behalf of the members of the Correction Captains Association, and petitioner Jerome Ship-man, a captain in the New York City Department of Correction (DOC), bring this CPLR article 78 proceeding to rescind a suspension without pay of Shipman.
FACTS
Shipman was indicted by a Bronx County Grand Jury on October 9, 1996 for assault, filing a false instrument and filing a false business report following an incident which occurred on July 3, 1993 involving the use of force on an inmate named Ronald Mask. On October 9, 1996, as a result of the indictment, Shipman was suspended without pay pending the outcome of the criminal charges. On October 22, 1996, a request seeking rescission of the suspension was denied.
Shipman had reported the 1993 incident when it occurred as required by regulations, and after an investigation no departmental charges were brought against him; in fact, the investigator’s report found that Shipman’s use of force was appropriate. Shipman, a 17-year veteran, had no record of other incidents, either before or after the 1993 incident at issue.
STATUTORY FRAMEWORK
Section 75 (3) of the Civil Service Law provides: "3. Suspension pending determination of charges; penalties. Pending the hearing and determination of charges of incompetency or misconduct, the officer or employee against whom such charges have been preferred may be suspended without pay for a period not exceeding thirty days.”
Section 76 (4) of the Civil Service Law, passed in 1958, states in pertinent part that nothing in sections 75 and 76 "shall be construed to repeal or modify any general, special or local law or charter provision relating to the removal or suspension of officers * * * Such sections may be supplemented, modified or replaced by agreements negotiated between the state and an employee organization * * * Where such sections are so supplemented, modified or replaced, any employee against whom charges have been preferred prior to the effective date of such supplementation, modification or replacement shall continue to be subject to the provisions of such sections as in effect on the date such charges were preferred.”
*652 Section 9-112 of the Administrative Code, of the City of New York, passed in 1976, provides in relevant part: "Where a member of the uniformed force shall be charged with the commission of a crime, he or she may be suspended without pay for the duration of the time that said criminal charges are pending final disposition.”
DOC directive 7504 (B) (5) provides for an employee’s suspension from duty in accordance with applicable law "at the discretion of the Commissioner.”
The DOC’s Modified Assignment Procedures provide in relevant part:
"A. A member of the uniformed force may be placed on modified assignment when he/she is:
"1. Arrested;
"2. Indicted by a Grand Jury;
"3. Charged with serious misconduct or incompetency;
"4. Otherwise unfit for ordinary assigned duty.”
With respect to the policy of the DOC, Elizabeth Loconsolo, currently DOC General Counsel, states in her affidavit that DOC uniformed officers facing felony charges are not brought up on departmental charges when arrested at the request of the District Attorney’s office while it prosecutes the criminal case. However, she states, continuing these officers on salary pending the outcome of criminal proceedings would not be in DOC’s interests. Citing DOC’s burden of maintaining order in its facilities, Loconsolo states that promptly isolating officers accused of felonies reinforces DOC’s expectation of "exemplary” conduct by its officers. She further states that DOC does not "have the luxury of being able to provide modified duty assignments” because administrative positions with no inmate contact are "highly coveted and considered employee perquisites”, and that placing officers against whom felony charges have been lodged in such position "would send absolutely the wrong message.”
DISCUSSION
Civil Service Law § 75, passed in 1958, prohibits the suspension without pay of a civil service employee for more than 30 days. Administrative Code § 9-112, passed in 1976, authorizes the suspension without pay of members of the uniformed forces charged with a crime (other than New York City police officers, Civil Service Law § 75 [3-a]) for so long as it takes to dispose of criminal charges. The City respondents argue that *653 Administrative Code § 9-112 is exempt under Civil Service Law § 76 (4), even though it was passed 18 years later.
The language of section 76 (4) on its face does not support respondents’ position. When section 76 (4) says that it shall not be construed "to repeal or modify” any contrary special or local law or charter provision, the language clearly refers to laws then in existence (see, Matter of Nieves v Haera, 165 AD2d 201, 203 [3d Dept 1991]). Moreover, respondents do not show any indication of legislative intent to exempt local laws enacted in the future from section 75’s prohibition of unpaid suspensions of more than 30 days. Standing alone, the changes in the language of the statutory provisions culminating in the present forms of Civil Service Law §§75 and 76 shed no light on the issue. Contrary to the City’s argument, the failure to use specific language in section 76 (4), making the exemption applicable only to laws "enacted prior to” the effective date of the statute, such as was used in General Municipal Law § 103 (1), does not support an interpretation that the Legislature intended to exempt future laws from the ambit of section 75 (cf., Matter of Nieves v Haera, supra). As noted, the language of section 76 (4) is clear as it stands, that the exemption applies to laws in existence when section 76 (4) was passed. Where the statute is clear and unambiguous on its face, the legislation must be interpreted as it exists. Absent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute. (See, Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 675-676 [1988].)
Had the Legislature wished to exempt future local laws from the application of section 75, it would have said so. Short of amending section 75 itself, the Legislature authorized only one way to circumvent section 75’s proscription against unpaid suspensions for more than 30 days, namely, "by agreements negotiated between the state and an employee organization”. (Civil Service Law § 76 [4].) There was no such negotiated agreement here (see, Matter of Robinson v New York City Tr. Auth., 226 AD2d 467 [2d Dept 1996]). A request from the District Attorney’s office that no administrative action be taken while criminal charges are pending is not sufficient to overcome the mandate of Civil Service Law § 75 (see, Levine v New York City Tr. Auth., 70 AD2d 900 [2d Dept 1979], affd 49 NY2d 747 [1980]).
The intent of Administrative Code § 9-112 was precisely to circumvent the statute. According to material contained in the Bill Jacket for the Administrative Code amendment, the then *654 Commissioner of Correction, Benjamin Malcolm, testified that the bill was needed because an employee who is charged with a criminal offense must be reinstated after 30 days under State law. The criminal trials usually last a year, Malcolm testified, during which time the employee receives back pay regardless of the outcome of the trial. The Commissioner cited cases in which an individual received $30,000 in back pay, although he was eventually dismissed from the department. When the Mayor signed the bill, he commended Commissioner Malcolm and "acknowledge[d] the cooperation and support of the Correction Officers’ Benevolent Association”. Whatever the nature of the "support” of the Correction Officers’ Benevolent Association, given the political context of the situation, the passage of a charter provision does not constitute a negotiated agreement between the City and a union (see, Matter of Robinson v New York City Tr. Auth., 226 AD2d 467 [2d Dept 1996], supra; cf., Seabrook v Jacobson, 970 F Supp 252). Even if the "support” of the Correction Officers’ Benevolent Association were held to constitute a negotiated agreement with DOC, it would not be binding on the petitioner here, the Correction Captains Association.
The merits of a provision such as Administrative Code § 9-112 are not at issue here. However, respondents may not achieve the desired result by the simple expedient of passing a local law which subverts the very purpose of Civil Service Law § 75 (3) (see, Levine v New York City Tr. Auth., 70 AD2d 900, 901 [2d Dept 1979], affd 49 NY2d 747 [1980], supra ["(T)he clear intent of (Civil Service Law § 75 [3]) is to protect public employees from prolonged payless suspensions on undetermined charges”]). Civil Service Law § 76 (4) cannot be interpreted to give carte blanche to a municipal government to enact a local law or charter provision, applicable to members of the uniformed forces, which is completely at variance with existing law limiting unpaid suspensions of civil service employees to no more than 30 days.
Petitioners’ objection to the suspension itself, however, fails: a suspension pending hearing and disposition of charges but with pay after 30 days is not unlawful (see, Delaney v Del Bello, 81 AD2d 566 [2d Dept 1981]). Section 75 (3) does not prohibit suspension from duties for a period longer than 30 days, nor does it mandate reinstatement if charges have not been determined (see, Matter of Prezio v De Santis, 38 AD2d 772 [3d Dept 1972]).
Petitioners’ argument that the Commissioner of Correction may not suspend DOC employees who are arrested, indicted or *655 charged with serious misconduct, but may only put them on modified assignment under the Modified Assignment Procedures, is without merit. It would be anomalous to interpret the Procedures as prohibiting the Commissioner from suspending employees accused of felonies or other serious misconduct when he or she could clearly suspend employees accused of less serious infractions. In this connection it would appear that DOC’s practice of using the Modified Assignment Procedures to reward favored employees rather than as discipline for those employees arrested, indicted or charged with serious misconduct, for which the Modified Assignment Procedures were expressly designed, is directly attributable to the Commissioner’s purported authority to suspend the latter category indefinitely without pay pursuant to Administrative Code § 9-112.
Administrative Code § 9-112 violates Civil Service Law § 75 (3) in that it authorizes the suspension of a member of the uniformed forces without pay for more than 30 days while criminal charges are pending, and it is not exempt from the section’s proscription by virtue of Civil Service Law § 76 (4). Since petitioner Shipman’s suspension for more than 30 days without pay was illegal, he is entitled to be restored to the payroll pending disposition of the criminal charges against him and to receive back pay following the first 30 days after his suspension, less income from outside sources.
Since the court finds that Administrative Code § 9-112 violates Civil Service Law § 75 (3), it is not necessary to reach the constitutional issues raised by petitioners (see, Matter of Syquia v Board of Educ., 80 NY2d 531, 535 [1992]).
Accordingly, the petition is granted to the extent indicated.